[Cite as *State v. Pasztor*, 2011-Ohio-6364.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10 BE 20 |
| | ) | |
| JEREMY PASZTOR, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Belmont County
                              Court, Western Division, Belmont
                              County, Ohio
                              Case No. 10CRB170

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee        Chris Berhalter
                              Prosecuting Attorney
                              Helen Yonak
                              Assistant Prosecuting Attorney
                              147 West Main Street
                              St. Clairsville, Ohio 43950

For Defendant-Appellant       Attorney Albert E. Davies
                              320 Howard Street
                              Bridgeport, Ohio 43912

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 9, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Jeremy Pasztor, appeals from a Belmont County Court, Western Division judgment convicting him of domestic violence following a bench trial.

{¶2} Appellant and Amanda Blon share a seven-year-old daughter. On Friday May 7, 2010, both appellant and Blon were at their daughter's school to watch a play. When the play ended, appellant attempted to leave the school premises with his daughter. He had a scheduled weekend visitation with her that was to commence later that evening. Appellant picked up his daughter and began to walk away. Blon attempted to stop him from leaving. According to Blon, appellant then "head butted" her. According to appellant, he simply walked into her. Blon fell to the ground sustaining minor injuries to her face and elbows.

{¶3} A complaint was filed against appellant charging him with one count of domestic violence. The matter proceeded to a bench trial. The court found appellant guilty as charged. It subsequently sentenced him to 30 days in jail, with 20 days suspended, placed him on one year of unsupervised probation, and ordered him to pay costs.

{¶4} Appellant filed a timely notice of appeal on August 26, 2010. The trial court stayed his sentence pending this appeal.

{¶5} Appellant raises a single assignment of error, which states:

{¶6} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF A VIOLATION OF OHIO REVISED CODE §2919.25(A) AS THE EVIDENCE PRESENTED AT THE BENCH TRIAL WAS INSUFFICIENT TO JUSTIFY A VERDICT OF GUILT AND SAID VERDICT OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶7} Appellant argues that his conviction was against both the sufficiency and the weight of the evidence. Appellant attacks the state's witnesses asserting that Blon had "credibility issues," another witness was a personal friend of Blon's, the arresting officer arrived on the scene after the incident, and the remaining witness's testimony was inconsistent. Appellant admits that there was physical contact

between him and Blon. But he asserts that the evidence established that it was "incidental" contact as he attempted to leave the school premises and not a "head-butt" as some witnesses described it. Appellant claims that the state failed to prove that he acted knowingly when the physical contact occurred. He further claims that his testimony established that he was unaware that his conduct would probably cause a certain result.

{¶8} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶9} The court convicted appellant of domestic violence in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family or household member" includes, "[t]he natural parent of any child of whom the offender is the other natural parent." R.C. 2919.25(F)(1)(b). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} The evidence before the court was as follows.

{¶11} Blon testified that as she, appellant, and their daughter were leaving school after the play, appellant asked the daughter if she was ready to go. (Tr. 9). Blon stated that the daughter did not want to go and appellant picked her up and began walking away. (Tr. 10). She stated that appellant's visitation was not to begin until 6:00 that evening. (Tr. 10, 14). She testified that she and appellant exchanged

words and then appellant "head butted" her in the face. (Tr. 10). She stated that she fell to the ground and appellant dropped their daughter. (Tr. 10). Blon said that she stood up and slapped appellant in the face. (Tr. 10). The principal then broke up the incident. (Tr. 10). Blon stated that as a result of the head butting and fall, she had bruising on her face and her elbows were "scuffed up." (Tr. 12).

{¶12} On cross examination, Blon admitted that she had been found in contempt of court on three occasions, two of which were for interfering with appellant's visitation rights. (Tr. 25).

{¶13} Dennis Huntsman was the next witness. Huntsman stated that he does not know appellant or Blon. (Tr. 28). He was at the school that day to pick up his son when he saw appellant walking down the sidewalk holding his daughter and heard Blon ask appellant to give the daughter back to her. (Tr. 29). Huntsman testified that he then saw Blon reach in to grab the daughter from appellant and appellant head butted Blon. (Tr. 29). Huntsman stated that the contact was not an accidental brushing away. (Tr. 29). He saw Blon fall to the ground. (Tr. 29). When asked on cross examination whether it looked like appellant put his head down and simply walked into Blon, Huntsman replied in the negative. (Tr. 33). He also stated that he did not see Blon slap appellant in the face. (Tr. 33).

{¶14} Dora Littleton testified next. She is a friend of Blon's who also happened to witness the incident while she was picking her son up from school. Littleton testified that she heard yelling and saw appellant and Blon grabbing each other. (Tr. 38). Littleton stated that she then saw appellant head butt Blon and Blon fell to the ground. (Tr. 38). Littleton walked over to Blon and appellant and saw Blon slap appellant in the face. (Tr. 39). Littleton repeatedly characterized the contact between appellant and Blon as a "head butt." (Tr. 46).

{¶15} Barnesville Police Officer Chris Hanes responded to a call regarding the incident at the school. By the time Officer Hanes arrived, appellant and Blon were in separate offices inside the school. (Tr. 50). Officer Hanes spoke to both appellant and Blon. Appellant told Officer Hanes that there was a confrontation between him

and Blon and that Blon tripped and fell into him and then fell to the ground. (Tr. 50). Blon told Officer Hanes that appellant was trying to take their daughter and he was "being mean." (Tr. 51). She further reported that she went to talk to appellant and appellant head butted her in the face. (Tr. 51). Officer Hanes testified that he took statements from three or four people on the scene and the statements were consistent with Blon's account of the incident. (Tr. 51-52). Officer Hanes also stated that he noticed injuries to Blon's eye and elbow. (Tr. 58).

{¶16} Finally, appellant testified in his defense. He stated that he arrived at the school around 1:30 in the afternoon and watched his daughter's play. (Tr. 69). After the play, appellant stated that he picked up his daughter and attempted to leave. (Tr. 69-70). He stated that at that point, his daughter went with him willingly and there was no problem. (Tr. 70). Appellant stated that he was carrying his daughter when Blon grabbed his arm and tried to pull his daughter from his arms. (Tr. 70-71). He testified that Blon then stepped in front of him and he reacted by putting his head down and running into her. (Tr. 71). He stated that Blon then fell and he tried to walk away from her. (Tr. 71). Appellant said that was when Blon got up and punched him in the face. (Tr. 71). Appellant stated that he had not planned to cause harm to Blon and simply wanted to get his daughter to begin his visitation. (Tr. 73). He stated that he did not head butt Blon. (Tr. 74). Instead, when Blon stepped in front of him, he "balled up and put his head down and kept walking, and she fell to the ground." (Tr. 74).

{¶17} This evidence is sufficient to satisfy each element of domestic violence. There was no dispute that Blon is the natural parent of her and appellant's daughter. Thus, she is considered appellant's "family member" under the domestic violence statute. See. R.C. 2919.25(F)(1)(b). Further, there was no dispute that appellant caused physical harm to Blon. Both Blon and Officer Hanes testified that Blon's face/eye and elbows were injured. And even appellant admitted that when he made contact with Blon she fell to the ground. The question was whether appellant acted "knowingly" in causing the injuries to Blon.

**{¶18}** Blon, Huntsman, and Littleton all testified that appellant head butted Blon. A head butt would imply knowing, purposeful, physical contact. Appellant testified that he simply ran into Blon, which would imply that his contact was more accidental. Under a sufficiency of the evidence review, we must construe the evidence in the light most favorable to the state. Since there was evidence to support the conclusion that appellant acted knowingly, his conviction was supported by sufficient evidence.

**{¶19}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

**{¶20}** Yet, granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, at ¶49, citing *State v. Hill* (1996), 75 Ohio St.3d 195, 205; *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶21} Appellant takes issue with the credibility of the state's witnesses. As to Blon, appellant portrays her as having credibility issues. Blon did admit to having been found in contempt of court three times which would seem to undermine her credibility. However, the other witnesses all corroborated her version of the events. As to Littleton, appellant states that she is a friend of Blon's. While this is true, Littleton witnessed the incident and her testimony was corroborated by other witnesses. As to Officer Hanes, appellant points out that he did not witness the incident. This too is true, however, Officer Hanes's testimony was about what appellant and Blon told him immediately after the incident. Finally, as to Huntsman, appellant contends that his testimony was inconsistent. But the only inconsistency between Huntsman's testimony and that of the other witnesses was that Huntsman stated that he did not see Blon slap appellant.

{¶22} In sum, three eyewitnesses testified that appellant head butted Blon. Officer Hanes testified that the statements he took from witnesses corroborated this. Only appellant testified that his contact with Blon was accidental. Which witnesses to believe was a matter for the trial court's determination given its superior position for observing the witnesses' gestures, voice inflections, and demeanor and ultimately determining credibility. Thus, appellant's conviction was not against the manifest weight of the evidence.

{¶23} Accordingly, appellant's sole assignment of error is without merit.

{¶24} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, P.J., concurs.